THE COUNTY OF DU PAGE *et al.*, Petitioners-Appellants, v. THE PROPERTY TAX APPEAL BOARD *et al.*, Respondents-Appellees.

Second District   Nos. 2—98—0283, 2—98—0346 cons.

Opinion filed March 10, 1999.—Rehearing denied April 15, 1999.

Joseph E. Birkett, State's Attorney, of Wheaton (Margaret M. Healy and Robert G. Rybica, Assistant State's Attorneys, of counsel), for appellants.

James E. Ryan, Attorney General, of Chicago (Royce A. White, Assistant Attorney General, of counsel), for appellee Property Tax Appeal Board.

Robert M. Sarnoff and Michael F. Baccash, both of Sarnoff & Baccash, of Chicago, for appellee Jewel Companies, Inc.

JUSTICE GEIGER delivered the opinion of the court:

In this consolidated appeal, the petitioners, the County of Du Page and the Du Page County Board of Review (collectively the county), seek direct review of two orders of the Property Tax Appeal Board (the Tax Appeal Board) reducing the assessed valuation of a piece of property leased by the respondent, Jewel Companies, Inc. (Jewel). On appeal, the county argues that the Tax Appeal Board's assessed valuation of the property fails to take into account the amount that the property's market value has been increased as a result of Jewel's right to use certain parking facilities on an adjacent parcel.

Jewel leases a store at the Danada Square West Shopping Center (shopping center) in Wheaton. The shopping center is 1,222,416 square feet and was constructed in 1987. When it was first constructed, the entire shopping center constituted one tax parcel. In 1992, Jewel filed an assessment plat that created a separate tax parcel for Jewel's store, identified as PIN 05—28—300—027 (parcel 027). All the other commercial buildings in the shopping center, along with the sidewalks and the parking lot, remained together on one large parcel identified as PIN 05—28—300—028 (parcel 028).

The parties agree that parcel 027 is a "pad parcel," consisting essentially of the Jewel store's "footprint." Specifically, the Jewel store contains 62,998 square feet on a pad site of 84,384 square feet.

Pursuant to the terms of Jewel's lease agreement with the owner of the shopping center, Jewel has the right to use certain common ar-

eas of the shopping center, including the parking lots and sidewalks found on parcel 028. The parties agree that use of these common areas is necessary to maintain the functional utility of the Jewel store and to meet applicable zoning requirements.

For the 1993 real estate tax year, the Milton Township assessor (assessor) placed an assessed value of $2,245,600 on parcel 027, reflecting a fair cash value of approximately $6,735,000. For the 1994 and 1995 tax years, the assessor placed an assessed value of $2,503,220 on parcel 027, reflecting a fair cash value of approximately $7,510,000. The Du Page County Board of Review held a hearing and confirmed the assessments. Jewel filed an appeal with the Tax Appeal Board, alleging overvaluation of the parcel during tax years 1993-95.

At the hearing before the Tax Appeal Board, each side presented the testimony of an appraiser. Each appraiser valued the parcels according to three accepted appraisal methods: the reproduction cost method, the income capitalization method, and the comparable sales method.

The county's appraiser, Michael MaRous, testified that the fair cash value for parcel 027 was $4,700,000 for tax years 1993, 1994, and 1995. MaRous testified that this appraisal amount did not include the value of Jewel's right to use the parking facilities on parcel 028. MaRous opined that an additional 117,750 square feet in parking facilities were required for Jewel to conform to the applicable zoning requirements. MaRous estimated that the 117,750 square feet in parking space used by Jewel on parcel 028 had a fair cash value of $1,060,000. Adding this contributory value, MaRous concluded that the fair cash value of parcel 027 for the tax years in question would be $5,760,000.

Jewel's appraiser, Michael Kelly, determined that the fair cash value for parcel 027 was $4,531,752 for tax year 1993 and $4,700,000 for tax years 1994 and 1995. Kelly explained that this valuation reflected the enhanced value of the property resulting from Jewel's rights to use the parking and common elements contained in parcel 028. Kelly acknowledged that, without the rights to the parking, Jewel would cease to be a functional store and its value would decrease significantly. Kelly nonetheless testified that it was improper to include the parking facilities in the appraisal of parcel 027 because these facilities were not physically contained on the parcel. Kelly estimated that the fair cash value of the portion of the parking facilities contained in parcel 028 that were being used by Jewel was approximately $1,320,000 for 1993 and $1,330,000 for 1994 and 1995. Subtracting these amounts from the fair cash value of the parcel, and taking other factors into account, Kelly arrived at an estimated value of $3,370,000 for each of the tax years.

The manager of property tax for Jewel Stores, Marc Johnson, testified that Jewel paid the landlord of the shopping center approximately $41,000 each year for tax years 1993, 1994, and 1995. This amount apparently represented Jewel's *pro rata* share of the property taxes for the parking facilities on parcel 028.

In its findings, the Tax Appeal Board specifically found that MaRous's appraisals were "inferior" because he did not utilize actual market values in determining depreciation and did not take into account rental income on comparable market sales. The Tax Appeal Board found that parcel 027 could not be assessed for the value of the parking facilities contained on parcel 028 and concluded that it was proper to subtract the contributory value of this land, which was on another parcel. The Tax Appeal Board therefore found that, for the tax years in question, parcel 027 had an assessed value of $1,222,210, reflecting approximately 33¹/₃% of $3,370,000. In essence, the Tax Appeal Board adopted Kelly's valuations.

The county appealed the Tax Appeal Board's orders pursuant to section 16—195 of the Property Tax Code (35 ILCS 200/16—195 (West 1996)), and this court consolidated the appeals. The county argues that the Tax Appeal Board erred by subtracting the value attributable to the parking facilities and common area easements from the assessed value of parcel 027. The county contends that the value of these rights is inherent in the value of parcel 027 and should be included in its valuation.

■ Our review of this case is governed by the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1996)). As in other administrative review actions, the Tax Appeal Board's findings and conclusions on question of fact are deemed *prima facie* true and correct. *Kankakee County Board of Review v. Property Tax Appeal Board*, 131 Ill. 2d 1, 14 (1989). This court will not disturb the Tax Appeal Board's findings where there exists simply a difference of opinion regarding the actual value of property. *Kankakee County*, 131 Ill. 2d at 14. However, where an improper method of valuation is used, reviewing courts will actively intervene. See *Kankakee County*, 131 Ill. 2d at 14.

■ Section 9—145(a) of the Property Tax Code (the Code) provides that each tract shall be assessed at 33¹/₃% of its fair cash value. 35 ILCS 200/9—145(a) (West 1996). Fair cash value, or fair market value, is defined as the price at which ready, willing, and able buyers and sellers would agree. *Kankakee County*, 131 Ill. 2d at 16.

In the instant case, Kelly determined that the fair cash value of parcel 027 was $4,531,752 in 1993 and $4,700,000 in 1994 and 1995. On appeal, the county does not dispute the accuracy of this valuation.

Rather, the county contends that it was improper for Kelly to reduce his valuation of parcel 027 based on an artificial distinction between the value attributable to the parcel itself and the value attributable to the common areas in parcel 028. We agree.

■ In *County of Du Page v. Property Tax Appeal Board*, 277 Ill. App. 3d 532, 536-37 (1995), this court specifically rejected Kelly's method of valuation. In that case, Kelly submitted appraisals on behalf of Neiman Marcus and Saks Fifth Avenue for their department stores at Oak Brook Mall. *County of Du Page*, 277 Ill. App. 3d at 534-35. The parcels on which both department stores stood were also "pad parcels." *County of Du Page*, 277 Ill. App. 3d at 533. As in the instant case, Kelly reduced his fair cash valuation of each parcel based upon his determination of the value attributable to the stores' right to use parking areas and common areas on adjoining parcels. *County of Du Page*, 277 Ill. App. 3d at 534-35. In holding that such a methodology was improper, we noted:

> "As a matter of common sense, every piece of improved real estate, whether used for residential or commercial purposes, derives some portion of its value from the fact that it is accessible by streets and sidewalks. It matters little whether the means of access are publicly or privately owned. Yet no one would seriously contend that each landowner is entitled to reduce his tax assessment proportionately by the value attributable to the streets and sidewalks.
>
> Even if it were permissible to make such a division, it would be, in practical terms, impossible to do so. Kelly testified that, without the right to use the parking and other common facilities, the stores would have no value. Thus, if we were truly to consider the value of the stores divorced from the common areas, their value would be zero. Such a result is, of course, untenable." *County of Du Page*, 277 Ill. App. 3d at 536.

We therefore concluded that the Neiman Marcus and Saks Fifth Avenue parcels had to be assessed according to their enhanced market value as a result of their right to utilize the parking facilities on adjoining lots. *County of Du Page*, 277 Ill. App. 3d at 536-37. We noted that such a conclusion was in harmony with section 1—130 of the Code, which defines real property as the land itself and " 'all rights and privileges belonging or pertaining thereto.' " *County of Du Page*, 277 Ill. App. 3d at 537, quoting 35 ILCS 200/1—130 (West 1994).

Jewel argues that *County of Du Page* is distinguishable because, unlike the facts herein, the county assessor in that case allegedly allocated certain land from adjoining parcels to increase the amount of land and land assessments charged to Neiman Marcus and Saks Fifth Avenue. However, our reading of *County of Du Page* demonstrates that

this court was solely concerned with the valuation of the actual "pad parcels" that contained the department store buildings. There is no discussion in *County of Du Page* that any additional land had been allocated to the parcels of Neiman Marcus and Saks Fifth Avenue, and we decline Jewel's invitation to distinguish the case on this basis.

■ Rather, we believe that the principles contained in *County of Du Page* are clearly articulated and control the disposition of the instant case. Jewel's right to have its customers park on and walk to its store across parcel 028 is undoubtedly one of the "rights and privileges belonging or pertaining" to parcel 027. See *County of Du Page*, 277 Ill. App. 3d at 537. It is these precise rights and privileges that give the parcel value as a commercial building. As a result of these rights, Kelly determined that the fair market value of the property was $4,700,000. As this is the price at which ready, willing, and able buyers and sellers would transfer the property, this is the proper fair cash value to be used in determining the assessed valuation for property taxes. See *County of Du Page*, 277 Ill. App. 3d at 536. We therefore conclude that the Tax Appeal Board erred when it deviated from the parcel's fair cash value in establishing the assessed valuation.

Jewel contends that, as a result of our holding, it will be subjected to double taxation because it also pays the owner of the shopping center amounts representing its *pro rata* share of the property tax on parcel 028. We rejected a similar challenge in *County of Du Page*, where both Neiman Marcus and Saks Fifth Avenue also paid a *pro rata* portion of the property tax on the common areas. *County of Du Page*, 277 Ill. App. 3d at 538. We noted that a party's private agreement to pay for its *pro rata* share of taxes on the common areas does not imply that the tenant is being taxed twice for the same property. *County of Du Page*, 277 Ill. App. 3d at 538. Rather, the assessed valuation of both parcels have been independently enhanced as a result of their physical proximity to one another. *County of Du Page*, 277 Ill. App. 3d at 538. Double taxation does not arise merely because the fair market values of the adjoining parcels have increased.

As noted above, the county does not dispute Kelly's 1993 appraisal of $4,531,752 and 1994 and 1995 appraisals of $4,700,000 as the fair cash value for parcel 027, including its rights and privileges over the common areas. We also note that, in both of its written decisions, the Tax Appeal Board accepted Kelly's valuation as to the fair cash value of parcel 027, taking into account its right to the parking facilities and common areas. Lacking any evidence that such a determination was incorrect, we hold that the fair cash value of parcel 027 for tax year 1993 was $4,531,752, and that the fair cash value of parcel 027 for tax years 1994 and 1995 was $4,700,000.

For the foregoing reasons, the orders of the Tax Appeal Board are reversed, and we remand the cause to the Tax Appeal Board with instructions to determine the assessed value of parcel 027 using a fair cash value of $4,531,752 for tax year 1993 and $4,700,000 for tax years 1994 and 1995.

Reversed and remanded with instructions.

COLWELL and THOMAS, JJ., concur.